# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| SAEILO ENTERPRISES, INC. | ) | |
| | ) | Case No.: 13 CV 2306 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | as Emergency Judge for |
| ALPHONSE CAPONE ENTERPRISES, INC. | ) | Judge Marvin E. Aspen |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Saeilo Enterprises, Inc. filed this action against Defendant Alphonse Capone Enterprises, Inc. on March 27, 2013, alleging federal trademark infringement, trademark dilution, false designation of origin or sponsorship, and trade dress infringement under the Lanham Act as well as trademark infringement and unfair competition under Illinois law. The complaint additionally petitioned for cancellation of Defendant's federal trademark registrations under 15 U.S.C. § 1064. This matter is before this Court in its capacity as Emergency Judge, sitting in place of Judge Aspen, the assigned judge. Plaintiff moves for a temporary restraining order prohibiting Defendant from selling Tommy Guns alcohol [49]. For the reasons set forth below, the Court grants Plaintiff's motion.

## I.    Background

Plaintiff's primary line of business is firearms. It manufactures the Tommy Gun, a gun that has existed in commerce since about 1920. It also sells promotional items, including hats, t-shirts, knives, flasks, lighters, pins, and other collectibles. Plaintiff owns three Tommy Gun trademarks, two of which are registered with the USPTO and one of which is registered with the State of Illinois. Defendant sells liquor-related products.

Around 2003, Defendant obtained substantially similar trademarks from the USPTO and began to sell alcohol in Tommy Gun-shaped bottles. Plaintiff, which plans to expand into the alcohol industry, filed its complaint alleging that Defendant has abandoned its own marks and infringed Plaintiff's marks. Particularly relevant here, the complaint alleges that (1) Defendant abandoned its marks by failing to use them for at least two years starting around 2011, and (2) any sales by Defendant post-abandonment would infringe Plaintiff's marks.

During discovery, the owner and manager of Defendant, William Brooks, testified that he last ordered Tommy Gun-shaped bottles three years earlier, Dkt. # 38-4, Brooks Dep., 84:22-24; that he last received a shipment two years earlier, *id.*, 56:1-4; that he had no pending orders, *id.*, 56:10-14; that he had not updated Defendant's website in at least three years, *id.*, 88:1-4; and that neither Defendant nor ACD had bank accounts, employees, or assets other than the employees, *id.*, 10:12-13, 34:8-9, 207:9-19. Based largely on these concessions, Plaintiff moved for partial summary judgment on its claim of abandonment.

According to Plaintiff, Defendant took steps to reintroduce Tommy Guns alcohol into the stream of commerce after discovery closed in April 2014. First, it caused one of its distributors, Marsalle, to purchase $444,412.38 worth of Tommy Guns vodka in July 2014. The Purchase Order, attached to Plaintiff's motion, requested a wire payment to Defendant's second distributor, Rockwood & Hines Ltd. Second, Brooks granted both distributors the right to use Defendant's marks in a Distribution Agreement dated August 18. Third, Defendant assigned its marks to Roaring 20s Marketing, Inc., another company owned by Brooks, on October 7. Finally, on December 1, Plaintiff's private investigator discovered that Marsalle had shipped Tommy Guns alcohol to retailers in Illinois, Tennessee, and Georgia. See Dkt. # 53-1, Aff. of

Benjamin A. Ford. That same day, Plaintiff moved for a temporary restraining order prohibiting Defendant from selling Tommy Guns alcohol.

In its brief opposing the TRO motion, Defendant makes various general assertions about its recent efforts, both in China and in the United States, to bring its alcohol to market. Apart from the Purchase Order, however, Defendant has presented nothing concrete, by way of affidavit or any other recognized manner of presenting evidence, in regard to the present location of the product – *i.e.*, how many bottles have been filled, shipped, and distributed and how many are on a shelf, ready for sale. In both its opening and reply briefs, Plaintiff has attached affidavits of its investigator which indicate that, as of yesterday, at least some small portion of the full Purchase Order had reached the shelves of small Illinois retail stores.

## II. Analysis

A party seeking a temporary restraining order must demonstrate as a threshold matter that (1) its case has some likelihood of succeeding on the merits; (2) no adequate remedy at law exists; and (3) it will suffer irreparable harm if preliminary relief is denied. *Abbott Labs. v. Mead Johnson & Co.,* 971 F.2d 6, 11 (7th Cir. 1992). If the moving party meets this burden, then the court must consider the harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Storck USA, L.P. v. Farley Candy Co.,* 14 F.3d 311, 314 (7th Cir.1994). Finally, the court considers the public interest served by granting or denying the relief, including the effects of the relief on non-parties. *Id.* The court then weighs all of these factors, "sitting as would a chancellor in equity," *Abbott,* 971 F.2d at 12, and applies a "sliding scale" approach, under which "the more likely plaintiff will succeed on the merits, the less the balance of irreparable harms need favor plaintiff's position." *Ty, Inc. v. The Jones Group,* 237 F.3d 891, 895 (7th Cir.

2001). Because neither party argues that a temporary restraining order would affect the public interest, and the Court cannot discern any reason why that factor would materially affect its analysis, the Court decides this motion on the basis of the first three prongs.

      **A.**      **Likelihood of Success on the Merits**

Under the sliding scale approach, a party seeking a TRO or a preliminary injunction must demonstrate "that it has a 'better than negligible' chance of success on the merits of at least one of its claims." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S.A.,* 549 F.3d 1079, 1096 (7th Cir. 2008). In its motion for partial summary judgment, Plaintiff argues that Defendant abandoned its marks as a matter of law. It further argues that if Defendant sold Tommy Guns alcohol post-abandonment, its sales would infringe Plaintiff's marks because they are substantially similar.

At the hearing on Plaintiff's motion, counsel for Defendant conceded that the marks are substantially similar, that Defendant created its product to replicate the Tommy Gun firearm, and that the bottle does, in fact, look similar to the firearm. The name of Defendant's business—Alphonse Capone Enterprises—plainly evokes the Prohibition era during which time Plaintiff's firearm became famous. It its response brief, Defendant resists the notion that confusion or dilution is likely because the parties operate in entirely different lines of business. If Plaintiff solely manufactured and marketed guns, and Defendant was solely in the alcohol business, Defendant's argument might carry greater weight. But the affidavit tendered with Plaintiff's motion avers that Plaintiff also sells a variety of promotional items and toys, all trading on the Tommy Gun marks. Although Plaintiff's contention that Defendant's alcohol product is "closely related" to Plaintiff's own products is by no means unassailable, Plaintiff has at least a better

4

than negligible chance of prevailing on that argument if Defendant adds a vodka bottle in the shape of a Tommy Gun to the existing mix of products.

Turning to the crux of the case on the merits, a mark is abandoned if

> its use has been discontinued with intent not to resume such use. Intent not to resume may be inferred from circumstances. Nonuse for 3 consecutive years shall be prima facie evidence of abandonment. "Use" of a mark means the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark.

15 U.S.C. § 1127. Both parties cite the Seventh Circuit's decision in *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947 (7th Cir. 1992), in support of their arguments on whether that standard has been met on the facts of this case. Plaintiff relies on Brooks's admissions at his deposition in arguing that Defendant's recent efforts to bring its alcohol product to market are for naught, because Defendant had already abandoned the mark when Plaintiff filed its summary judgment motion. Brooks's statements that he last ordered Tommy Guns alcohol three years earlier, that he last updated the website over three years earlier, that he last received a shipment two years earlier, that he had no pending orders, and that Defendant lacked any bank accounts, employees, or assets other than the trademarks, all support Plaintiff's claim of abandonment. See MSJ at 7-10. In its response to Plaintiff's motion for summary judgment, Defendant offers little evidence showing use or intent to resume use from 2012 to 2013; its strongest evidence consists of invoices billing one of Defendant's distributors, Cracovia, less than $200 for small orders of Tommy Guns replica vodka during this period. Dkt. # 40-9, Resp. MSJ, Ex. I. Defendant contends that under *Sands*, "minimal efforts" such as those expended by Brooks are enough to establish intent to use and defeat a claim of abandonment. And, to the extent that it may not be too late, Defendant's recent activity shows a much stronger effort to use its mark.

On a motion for a temporary restraining order, this Court need not conduct a full-blown summary judgment analysis, which necessarily would involve parsing the *Sands* case and

5

offering a nuanced view as to whether Defendant's efforts are too little and too late. For present purposes, it suffices to conclude that, as with the infringement issue, Plaintiff has shown a far better than negligible chance of prevailing on the abandonment issue as well. To be sure, because Plaintiff's claim on the merits is not overwhelming or unassailable, under the "sliding scale" Plaintiff still must make a reasonably strong showing on the other elements of the analysis.

B.      **Inadequate Remedy at Law / Irreparable Harm**

Plaintiff argues that Defendant's alcohol sales will irreparably harm its goodwill and impede Plaintiff's planned entry into the alcohol market. Irreparable harm is generally presumed in trademark infringement cases. *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000); see also *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 18 (7th Cir. 1992). Defendant offers no persuasive authority or argument rebutting this presumption. Thus, for the purposes of this motion, the Court finds that Plaintiff lacks an adequate remedy at law.

C.      **Balancing of Harms**

Based on the record currently before the Court, the balance of the harms analysis also favors Plaintiff. Alcohol is neither seasonal nor perishable, so a temporary restraining order will have little effect on the value of Defendant's inventory, at least in the short term. Defendant points to potential harm to its Chinese manufacturer and American distributors from any delay in bringing the liquor products to their final market destinations. But Defendant fails to offer any affidavits or evidence quantifying the extent of this harm. In weighing the legally presumed irreparable harm to Plaintiff based on Defendant's alleged infringement without a legally valid mark against this unsubstantiated harm to Defendant (and third parties working with Defendant), the Court finds that the balance of hardships tips in Plaintiff's favor. And this is all the more so

6

when one considers the mechanics of making the losing party whole after a final disposition. Should Plaintiff prevail in the end, but suffer harm in the interim from Defendant's infringement, the Court would be hard-pressed to determine the damage to Plaintiff's reputation, and Plaintiff might have difficulty collecting any damages awarded given the uncertain financial picture of Defendant that can be pieced together from the summary judgment record. By contrast, should Defendant ultimately prevail, but suffer harm in the interim from a temporary injunction blocking its sales, its damages could be measured in lost profits and related business expenses, which it could collect from the bond that Plaintiff must post as security for the injunction.[1]

### D. Bond

Federal Rule of Civil Procedure 65(c) requires a party obtaining a temporary restraining order to post a bond sufficient to "pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Unfortunately, neither party specifically addressed the value of an adequate bond in its briefs, despite the Court's request that they do so. Further complicating the inquiry is the dearth of information on the current status of the shipments of Defendant's product from China to points of sale in this country. To the extent that the record contains any specifics, they have been provided largely by Defendant. The Purchase Order indicates that more than $400,000 in product ultimately is scheduled to reach the market, but it lacks specific target dates. According to the sparse evidence of record, at least 140 of the 5,800 cases ordered have been distributed to small retailers

---

[1] For example, Defendant argues that a temporary restraining order will harm the shipping companies by forcing them to hold or return the containers in transit, but this order only restrains the sale of alcohol, not its manufacture, shipment, or storage. Defendant has provided no detail in regard to where in the stream of commerce its products currently stand, but to the extent that Defendant ultimately prevails, it certainly can argue that any damages incurred as a result of an erroneously issued injunction are recoverable and should be paid out of Plaintiff's bond.

in Illinois. Plaintiff estimates that these cases have a value, at most, of $10,000. Perhaps there are more cases on shelves already, but how many remains unknown to the Court at this time.

In setting the amount of the bond, the Court will take a conservative approach and require a bond of $50,000 at this time – which is well in excess of the amount of product known to have reached market. The extra amount is justified, however, based on Defendant's concerns about additional shipment and storage expenses that the injunction may cause. Should the parties marshal additional evidence that bears on the amount of the bond, they may present it to Judge Aspen in a request to modify the terms of the bond should he decide to continue the injunction in place, either by extending the TRO or by entering a preliminary injunction. See *Hoosier Energy Rural Elec. Co-op., Inc. v. John Hancock Life Ins.* 2008 WL 5216027, at *5 (S.D. Ind. Dec. 11, 2008); *Olympia Equip. Leasing Co. v. W. Union Tel. Co.*, 786 F.2d 794, 799 (7th Cir. 1986) (noting that a district court may modify analogous security orders under Rule 62(d) in light of changed circumstances).

### III. Conclusion

For the reasons stated above, the Court grants Plaintiff's motion for a temporary restraining order [49] and finds and orders the following:

1. Based upon the briefs and affidavits filed by the parties and the arguments of counsel in open court, the Court finds that Plaintiff has sustained its burden and demonstrated some likelihood of success on the merits. The Court also finds that Plaintiff likely lacks an adequate remedy at law and will suffer irreparable harm should a temporary restraining order not be issued. The balance of the hardships additionally weighs in Plaintiff's favor.

2. Pursuant to Federal Rule of Civil Procedure 65(b), a fourteen day temporary restraining order, commencing at 1:00 p.m. on December 5, 2014 and expiring at 1:00 p.m. on December 19, 2014, is entered. Pursuant to this order, Defendant, its agents, servants, employees, officers, attorneys, successors and assigns, and all persons, firms, and corporations acting in connection or participation with it or on its behalf, are enjoined from selling alcohol in Tommy Guns-shaped bottles.

3. To ensure that adequate security is provided to Defendant, Plaintiff is directed to post a bond of $50,000 with the Clerk of the Court as soon as practicable.

4. To ensure that sales of Defendant's product do not take place in violation of this order, Defendant is directed to provide notice of the terms of this injunction as soon as practicable to its agents, servants, employees, officers, attorneys, successors and assigns, and all persons, firms, and corporations acting in connection or participation with it or on its behalf.

5. This matter is set for a status hearing before Judge Aspen on Thursday, December 18, 2014 at 3:00 p.m.

Dated: December 5, 2014

_____
Robert M. Dow, Jr.
United States District Judge
as Emergency Judge for
Judge Marvin E. Aspen